## ROBERT BYERS

v.

## WILLIAM E. ALCORN.

1. SURETY—CONTRIBUTION—DISCHARGE IN BANKRUPTCY.—Discharge of a surety in bankruptcy cannot be pleaded as a defense to a claim by his co-surety for contribution, where payment of the debt has been made by such co-surety.

2. INSUFFICIENT DESCRIPTION OF LIABILITIES.—In composition proceedings, in the statement of debts due, the note in question was described as " payable to R. J. McKenney." The payee of the note was the firm of R. J. McKenney & Co., composed of five persons. Held, there was not a sufficient statement of the name of the payee, to discharge the bankrupt of his liability as surety on such note to the payee.

3. COMPOSITION—PARTIES—CONTINGENT LIABILITY.—In such composition proceedings, the name of appellee as co-surety on such note with one of the bankrupts, did not appear in the statement of liabilities of the bankrupts, he was not made a party thereto in any way, and his right to contribution from his co-surety is not affected thereby.

ERROR to the Circuit Court of Richland county; the Hon. JAMES C. ALLEN, Judge, presiding. Opinion filed April 2, 1880.

Messrs. BELL & GREEN and Mr. R. S. CANBY, for plaintiff in error; that the composition proceedings were binding upon all creditors therein named, cited Bump on Bankruptcy, 593.

A surety cannot recover against a principal who has been discharged in bankruptcy: Lipscomb v. Grace, 26 Ark. 231.

To a bill by a surety for contribution by his co-surety, the principal debtor must be a party: Rainey v. Yarborough, 2 Ired. 249; Trescatt v. Smyth, 1 McCord, 300.

In equity, the insolvency of the principal must be shown: Sloo v. Pool, 15 Ill. 47.

Costs and attorneys' fees of surety cannot be recovered of a co-surety: 1 Parsons on Contracts, 33; Boardman v. Paige, 11 N. H. 431.

Messrs. WILSON & HUTCHINSON, for defendant in error; cited U. S. Rev. Stat. § 5068; Clement v. Longely, 2 Nev. & M.; Goss v. Gilson, 8 Humph, 197; Eberhardt v. Wood, 2 Tenn. Ch. 488; Dunn v. Sparks, 1 Ind. 397; Kerr v. Clark, 11 Humph, 77; Guild v. Butler, 122 Mass. 500; 5 Waite's Actions and Defenses, 225.

WALL, J.   Byers & Boody were a firm, composed of Alexander L. Byers and George W. Boody; and A. L. & R. Byers were a firm, composed of the said Alexander L. Byers and Robert Byers, the plaintiff in error, who was the defendant in the court below.   On the 9th day of December, 1874, the firm of Byers & Boody borrowed of R. J. McKenney & Co., of Vincennes, Indiana, the sum of $2,000, and gave their promissory note for that amount, and of that date, payable ninety days after date, at the Vincennes Deposit Bank, Vincennes, Indiana, with interest at the rate of ten per cent. from date until paid, and providing that, if the note should be collected by suit, the judgment should include the reasonable fee of the plaintiff's attorney.   Before this note was delivered to R. J. McKenney & Co., the name of the firm of A. L. & R. Byers was added as surety, and, also, the name of William E. Alcorn, the defendant in error, and the complainant in the court below. The relation of these different parties to the note, then, was: Byers & Boody, principals, A. L. & R. Byers, sureties, and William E. Alcorn, surety.

A suit was brought on this note to the April term, 1875, of

Byers v. Alcorn.

the Richland Circuit Court, against the firm of Byers & Boody, and A. L. & R. Byers, and William E. Alcorn, and a judgment was recovered against all the defendants, except Robert Byers, for the sum of $2,018.34, damages, and $125, attorneys' fee, and $29.50, costs of suit; which judgment was paid by William E. Alcorn, the defendant in error, on the 16th day of June, 1875, and amounted at that time to the sum of $2,166.10. Alexander L. Byers died about February 1, 1877.

On the 6th day of April, 1875, Alexander L. Byers and Robert Byers, as individuals, and as the firm of A. L. & R. Byers, on their own petition, were adjudged voluntary bankrupts by the District Court of the United States for the Southern District of Illinois. Afterwards, on the 18th day of May, 1875, at a meeting of their creditors, called and held for that purpose, they proposed a composition with all their creditors, partnership and individual; which composition was accepted by a unanimous vote of the individual creditors of Alexander L. Byers and Robert Byers, and the creditors of the firm of A. L. & R. Byers there present; and afterwards, on the 12th day of June, 1875, the said composition was approved and confirmed, on due notice to all creditors, by the decree of said District Court, and was made binding by said decree, on all the individual creditors of Alexander L. Byers and Robert Byers, and all the partnership creditors of the firm of A. L. & R. Byers, whose names and addresses, and the amounts of debts due to whom, are shown in the statement of assets and debts exhibited by said bankrupts, at the meeting held for the purpose of said composition.

On these facts, the defendant in error, William E. Alcorn, filed his bill in chancery, in the Richland Circuit Court, against the plaintiff in error, Robert Byers, at the April term, 1877, alleging the insolvency of the firm of Byers & Boody, and of the estate of Alexander L. Byers, and praying for a decree against the said Robert Byers, as a co-surety on the said note to R. J. McKenney & Co., for contribution, as to one half of the sum of money paid in satisfaction of the judgment recovered on said note. A decree was rendered as prayed, by the Circuit Court of Richland county, and the defendant below, the plain-

tiff in error here, brings the record to this court, and assigns the rendition of said decree as error.

The important question to be considered is whether by virtue of the bankruptcy proceedings, Robert Byers has been so far discharged of all liability in reference to this note and the matters growing out of it, as to relieve him from the duty of contributing to his co-surety, Alcorn, who has paid the whole debt. The discharge in this case is to A. L. & R. Byers, as partners and individuals, and relieves them of their indebtedness to all their creditors "whose names addresses, and the amounts due to whom are shown in the statement of debts and assests" exhibited by the bankrupts at the meeting of the creditors held for the purpose of composition. Was the plaintiff in error, Robert Byers, discharged of his liability to the payee of the note—and if so, was he thereby discharged of the subsequently arising demand of Alcorn for contribution? In the statement of assets and debts presented at said creditors' meeting, the principal debt was described as a note payable to "R. J. McKenney, Vin., Ind." The payee of the note was the firm of R. J. McKenney & Co., composed of five persons, R. J. McKenney and four others. We are inclined to hold the contraction Vin. Ind. might be taken to indicate Vincennes, Indiana, more especially as the parties all reside near that place, and would, and doubtless did so understand the contraction. We can readily see that it might convey to their minds a sufficient knowledge of the address, and while the same may have been true in this instance as to the name of the creditor, yet we are hardly prepared to say so, and are disposed to think there was not a sufficient statement of the name of payee of the note as to discharge Robert Byers of his liability to him. This, however, is not a controversy between Byers and the payee of the note; it is between him and his co-surety, Alcorn. There was no statement showing that Alcorn was a creditor of A. L. & R. Byers as individuals or partners. There was nothing in the statement showing the assets and debts of A. L. & R. Byers that indicated Alcorn as their creditor, or that gave his address or the amount due him. Indeed, we do not understand that the position is assumed by plaintiff in error, that such was the case.

Byers v. Alcorn.

The answer of the defendant avers "that the name, address and amount due R. J. McKenney & Co. appear on the statement of assets and debts referred to in the decree of discharge, and that complainant had due notice of the proceedings in bankruptcy, and had an opportunity to set up any claim that he might have had against the defendant, and that prior to the payment of the debt the whole matter had been adjudicated by the Bankrupt Court, and the defendant discharged of all liability in respect to said note in equity as well as in law," so that the defense is placed upon the ground that the name and address of R. J. McKenney & Co. appear in the statement of assets and debts, and not upon any pretense that the name and address of Alcorn, and the amount due him as a creditor, appear in said statement. The only theory upon which the defense can be predicated, is that by reason of Byers being discharged of his liability to the payee of the note he is also discharged of his duty to contribute to his co-surety, who subsequently paid the whole debt. We think it very clear that Alcorn was not a creditor of Byers at the time of this creditors' meeting, nor at the time of the discharge, and if he ever had a claim against him which could have been proven in bankruptcy, it was contingent and had not then matured. The bankrupt law recognizes the distinction between actual and contingent liabilities, and there is a provision (Sec. 5068) by which in all cases of contingent debts and liabilities contracted by the bankrupt, the claim may be proven up with the right to share in dividends, if the contingency happens before the final dividend, or the present value of the liability may be ascertained and liquidated, which shall then be done in such manner as the court may order, and the amount so ascertained may be proven. And, by sections 5069 and 5070, provision is made to protect persons liable as indorsers, bail surety, guarantor or otherwise for the bankrupt.

By Sec. 5117 U. S. Stat., it is provided that no debt created by the fraud * * * * of the bankrupt, or in a fiduciary capacity, shall be discharged.

Sec. 5118 provides that no discharge shall release, discharge or affect any person liable for the same debt for or with the

bankrupt, either as a partner, joint contractor, indorser, surety or otherwise, and by section 5119, it is provided that a discharge duly granted shall, subject to the limitations imposed by the preceding sections, release the bankrupt from all debts, claims, liabilities and demands which were or might have been proven against his estate in bankruptcy. This, we understand, refers to a general discharge duly granted—in the due course of proceedings—where all persons have the right to present their claims for allowance, whether they have been named or in any manner noticed by the bankrupt, but does not apply to the decree granted in composition proceedings.

Sec. 22 of the act of 1874, under which these proceedings were had, among other things provides: "The provisions of a composition accepted by such resolution, in pursuance of this section, shall be binding on all the creditors whose names and addresses and the amounts of the debts due to whom are shown in the statement of the debtor, produced at the meeting at which the resolution shall have been passed, but shall not affect or prejudice the rights of any other creditors." Alcorn was not named as a creditor, and by the express language of the act, his rights, if it can indeed be said that he had any at that time capable of being affected or prejudiced, were saved. Let us now consider briefly the character of the relation occupied by co-sureties to each other, and some of the rights and remedies incident thereto. When these two sureties signed the notes in question, they thereby expressly bound themselves to the payee for the whole amount of the note. They made no express contract with each other. It was early settled in courts of equity that where one surety paid the debt in full or paid more than his proportion, he had an equitable claim on his co-surety for contribution, upon the clear ground that it would be against equity for the creditor to exact or receive payment from one and permit or by his conduct cause the other debtors to escape, and it is said by Story, vol. 1, sec. 493, that the "relief does not therefore stand upon any notion of contract express or implied between the sureties to indemnify each other (as has sometimes been argued), but it arises from principles of equity independent of contract." As the right

Byers v. Alcorn.

depends on this equitable principle, it is immaterial whether the sureties are all liable upon the same or upon different instruments, provided they are bound for the same principal and for the same engagement, nor whether they know of each others liability.    Davis v. Humphrey, 6 M. & W. 167; Deering v. Earl of Winchelsea, 1 Cox, 321; Craythorn v. Swinburn, 14 Ves. Sr. 169; Craig v. Ankeny, 4 Gill 225; Story's Eq. Jur. 495.

In all these authorities it is distinctly and forcibly announced that the right of contribution rests upon the equity arising from the relation of the parties, and not from any consideration of contract.    The sole jurisdiction to enforce this right was originally in the court of chancery, in which tribunal the right was first asserted, but courts of law afterwards assumed it.    In Craythorn v. Swinburn, *supra*, Lord Eldon remarked, referring to Deering v. Winchelsea: "Lord Chief Justice Eyre decided in that case that this obligation of contribution is not founded upon contract, but on a principle of equity, and Sir Samuel Romilly has very ably put, what is consistent with every idea, that after the principle has been universally acknowledged, then persons acting under circumstances to which it applies may be said to act under the head of contract implied from the universality of the principle.    Upon that head stands the jurisdiction assumed by courts of law."    In courts of law the surety may recover only an aliquot part, but in courts of equity relief is afforded not only to this extent, but upon the principle of equality applicable to a common risk, and if one surety is insolvent the loss is apportioned among the others, and all other considerations of an equitable nature are taken into account, and relief afforded accordingly.    Story Eq. Jur. 496-7-8; Sloo v. Pool, 15 Ill. 47.    It has been held that the discharge of the principal in bankruptcy would bar the claim of his surety against him for the amount which the latter had been compelled to pay.    Lipscomb v. Grace, 26 Ark. 221, and the cases there cited; but we have been referred to no case or authority where it is held that a discharge can be so pleaded as a defense to a claim by one surety against his co-surety for contribution.    It has been repeatedly held, however,

that it cannot be so pleaded. In Goss v. Gilson, 8 Hump. 197, which was such a case, it was said: "We do not think the complainant's demand was embraced by the words "other persons having uncertain or contingent demands," used by the 5th section of the bankrupt law. At the time these defendants were declared bankrupts the complainant had no debt or demand against them. Their liability does not exist as a matter of contract between themselves, but arises out of the equity that exists between them as co-sureties for another. The complainant had no demand that he could prove when the defendants were declared bankrupts. The probability of the claim that now exists was incapable of valuation."

In Clements v. Langley, 2 Nev. & Man. it was said that the debt was incapable of estimation, because the contingencies were too great. Similar views were expressed in Kerr v. Clark, 11 Hump. 77; Dunn v. Sparks, 1 Ind. 397; see, also, Burge on Surety; 488 Chitty on Contracts, 185 note J; Bennett v. Bartlett, 6 Cush. 225, and Woodward v. Herbert, 24 Me. 358. The language of the present bankrupt act is substantially like that of 1841 in this respect, and it would seem that the current of authority supports the view, that in cases of this sort there is no such debt or liability present or contingent as can be proven in bankruptcy, yet if it were probable, as we have already shown, it was not barred by the composition proceedings in this instance for the reasons given. It is urged, however, that the fact, the judgment in the Circuit Court was against all the parties to the note, except Robert Byers, he, being a party to the suit, discharged him from this liability, and reference is made to the case of Byers v. Banks, etc. 85 Ill. 423. It is no doubt true, that such a judgment was erroneous and might have been reversed, and it may be it would while unreversed have been a bar to another suit by the payee of the note against Byers. This, however, springs from a technical view of the necessary rules of pleadings in courts of law, and cannot affect the right of contribution in a court of equity. It was in a court of equity that this obligation was first asserted and enforced, and it would be strange indeed if a tribunal professing to administer justice upon the broadest prin-

ciples, should lay hold of such a technicality, in order to bar the complainant from relief in a matter which has always been regarded as peculiarly within its jurisdiction, and where by reason of equity, and not of contract, as often declared the right to the relief originated.   Alcorn had no control of the suit at law.  . He was but a defendant; and it has not been suggested how the action of the payee in taking judgment against all, except Byers, (thereby depriving himself of his right to subsequently sue Byers,) can prejudice the equitable right of Alcorn.   The judgment was there in full force.   Alcorn was bound to pay it, or seek its reversal.   This he might have procured, but the debt subsisted, and in the end he must have paid it.   It was rendered by a court having jurisdiction of the person and subject matter; it was binding on him at least, and if he paid it, he might well have the relief here sought.

In Camp v. Bostwick, 20 Ohio St. 337, the creditor had by his neglect to present his claim within the proper time, lost the right to an allowance against the estate of one surety, and enforced payment from another.   The latter having so paid the debt, was permitted to recover from the estate of the co-surety, it being held that the neglect of the creditor could not prejudice the right of the surety who paid the debt—being legally bound to do so—to have contribution in respect thereof.   There are many adjudications to the same effect.   We may refer especially to the case of Boardman v. Paige, 11 N. H. 438, where the subject was fully and ably considered.   That was a case where the defendant had defeated a former action by the creditor, but the plaintiff was not successful in avoiding liability, and had been compelled to pay, after which he sued for contribution. It was objected by the defendant that as he had defeated the payee, the co-surety could not recover; but it was held otherwise, and the rule was declared that where a surety, without incurring a new obligation, pays the debt, being lawfully compelled to do so, his equitable right to contribution is perfect, notwithstanding any contract of the payee with the co-surety, and notwithstanding the operation of the Statute of Limitations; and generally that unless the contract or other matter of defense relied on, be such as to bar the right of the creditor

against all the sureties, it will not bar contribution in favor of the one who has been compelled to pay. We are forced to the conclusion that this objection is untenable, and upon the whole case we are of the opinion that the relief sought by the bill ought to be granted.

The only remaining question which we think necessary to notice is, whether there is a lack of necessary parties. It is not controverted that in suits of this nature, all the sureties, as well as the principal debtor, are indispensable parties unless some reason be assigned in the bill for omitting them. Ramsey v. Yarbrough, 2 Iredell Eq. 249; Story's Eq. Pl. 169.

It is alleged that Boody and the estate of A. L. Byers are insolvent; and if so, there would be no necessity of joining them. But the evidence shows this allegation is not wholly true, and that the estate of A. L. Byers is partially solvent. The cause will therefore be reversed and remanded in order that new parties may be made. If any money has been paid upon the composition notes, there should be a credit to that extent upon this demand. If these notes have not been paid, but are secured in whole or in part, the fund should be reached and applied, as far as it will go, to the relief of these sureties (Story's Eq. Jur. 499), and the court having jurisdiction of the whole subject, and having before it all the parties interested, should do full and complete justice to and between all of them by thoroughly disposing of all the equities involved in the controversy.

Reversed and remanded.